# IN THE UNITED STATES DISTRICT COURT,
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## MIDDLE DIVISION

| | |
|---|---|
| **RONALD W. HELMS,** ) | |
| **individually and on behalf of** ) | |
| **all persons similarly situated,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CV-03-HS-1439-M** |
| ) | |
| **CONSUMERINFO.COM, INC.,** ) | |
| **a corporation,** ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER
## ADDRESSING CLASS CERTIFICATION

### Factual & Procedural Background

On June 17, 2003, pursuant to 15 U.S.C. §1679g which allows for private

causes of action, Ronald W. Helms (hereafter "Plaintiff") filed a putative class

action for damages alleging Defendant violated § 1679b(b) of the CROA (Count

One).  Plaintiff also brought claims for unjust enrichment (Count Two),

constructive trust (Count Three), and conspiracy (Count Four).  Defendant

answered on July 31, 2003, denying liability and asserting affirmative defenses.

Nearly a year after the original complaint was filed, Plaintiff filed his first

amended complaint.  Plaintiff's amended complaint added to Count One violations

of § 1679b(a)(3), § 1679b(a)(4), § 1679c, § 1679d, and § 1679e(b) and (c).

Counts Two, Three, and Four were re-alleged and unamended.[1]  Defendant

answered, denied liability, asserted affirmative defenses, and contended that the

CROA does not apply to it.

On May 28, 2004, Plaintiff moved for class certification pursuant to Federal

Rule of Civil Procedure 23(b)(3).  After Plaintiff's motion for class certification

was filed but before Defendant responded, Plaintiff moved for partial summary

judgment on June 14, 2004.  In September 2004, Defendant filed a cross motion

for summary judgment and its opposition to Plaintiff's motion for partial summary

judgment.  Shortly thereafter, Defendant filed its opposition to Plaintiff's motion

for class certification on September 3, 2004.  Eleven days later, Plaintiff answered

with its reply to Defendant's opposition to class certification.

After both parties had fully briefed the class certification issues, Defendant

moved the Court to sequence proceedings.  The Court granted Defendant's motion

and determined the pending summary judgment motions would be decided prior to

class certification.  On February 14, 2004, the Court granted in part and denied in

part Plaintiff's motion for partial summary judgment and granted in part and

---

[1] This case was originally assigned to Magistrate Judge Robert Armstrong.  On June 23, 2004, it was reassigned to the undersigned.  Additionally, by its November 22, 2004 order the Court dismissed Count Four for conspiracy pursuant to Federal Rule of Civil Procedure 12(b)(6) and noted that Count Three for constructive trust was not properly plead as a cause of action.

denied in part Defendant's cross motion for summary judgment. The Court's February 14 order noted that questions at issue were ones of first impression, and pursuant to 28 U.S.C. § 1292(b), granted either party the right to appeal.

Neither party having chosen to appeal the Court's February 14 order within the available ten day time period, the Court now addresses whether the claims in the instant law suit are appropriate for class certification. The court now has before it Plaintiff's motion for class certification with accompanying memorandum of law and exhibits.[2] Also before the Court is Defendant's opposition to class certification with supporting evidentiary submissions and Plaintiff's reply thereto, also accompanied by exhibits. The Plaintiff's motion for class certification is now under submission.

The factual background of this proceeding was fully and accurately addressed in this Court's February 14, 2005 order regarding the parties' motions for summary judgment. Any additional facts that are pertinent to class certification will be included in the following analysis.

---

[2] Plaintiff has not moved for class certification as to his remaining state law claim of unjust enrichment. Accordingly, the Court will not address that issue.

3

**Class Certification**[3]

To maintain a class action the advocate of the class must convince the court that "it satisfies all the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)." Rutstein v. Avis Rent-A-Car Systems, Inc., 211 F.3d 1228, 1233 (11th Cir. 2000) (quoting Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997)); accord Amchem Prods. Inc., v. Windsor, 521 U.S. 591, 613 (1997); Sikes v. Teleline, 281 F.3d 1350, 1359 (11th Cir. 2002). Rule 23(a) requires a showing of numerosity, commonality, typicality and adequacy of counsel. Rule 23(a); see also Hines v. Windall, 334 F.3d 1253, 1255-1256 (11th Cir. 2003). In the instant case, Plaintiff seeks to establish his class pursuant to Rule 23(b)(3). In addition to the threshold showing under Rule 23(a), Plaintiff must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is a 'superior' method of adjudicating the controversy." Sikes, 281 F.3d at 1359 (quoting Fed. R. Civ. P. 23(b)(3)). "The

---

[3] The Supreme Court has stated that "[t]he class action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only . . .'" and is appropriate where the "device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 155 (1982) (citations omitted). The Court conducts its analysis of Plaintiff's claims in light of these principles.

initial burden of proof to establish the propriety of class certification rests with the advocate of the class." <u>Rutstein</u>, 211 F.3d at 1233.  The decision to certify a class is within "the sound discretion of the district court." <u>Cox v. Am. Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1553 (11th Cir. 1986); <u>accord</u> <u>Hines</u>, 334 F.3d at 1255; <u>Sikes</u>, 281 F.3d at 1359.

With the foregoing principles in mind the following analysis will address each of Rule 23(a) and 23(b)(3)'s requirements respectively as they apply to Plaintiff's proposed class.  The Plaintiff proposes the following class:

> All persons in the United States who purchased any credit repair service from Defendant since June 1, 1998 and who (1) paid any money or other valuable consideration to Defendant in advance for such service before defendant fully performed the service, (2) did not receive disclosures required by 15 U.S.C. § 1679c, (3) did not receive the written contract required by 15 U.S.C. § 1679d, and/or (4) did not receive a cancellation form and other information required by 15 U.S.C. § 1679e.[4]

---

[4]  Plaintiff stipulates the following exclusions to the class:

(a)    All judicial officers in the United States and their families through the third degree of relationship;

(b)    Defendant and any of its related entities, officers, directors, and employees, and any person or entity who has already settled or otherwise compromised their claims against the Defendant;

(c)    Anyone who filed before final judgment any bankruptcy proceeding; and

(d)    Anyone who has pending against the named Defendant on the date of the court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.

Because the Court concludes that continuing this action in class form is not a "superior" method of adjudication, as required by Rule 23(b)(3), the Plaintiff's motion for class certification is due to be denied.

**1.     Rule 23(a)**

      a.     *Numerosity*

The Eleventh Circuit has recognized that "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, [and] more than forty adequate . . .'" <u>Cox</u>, 784 F.2d at 1553 (citations omitted).  Defendant concedes that Plaintiff's class definition would include more than two million members and is sufficiently numerous to satisfy Rule 23(a).  There being no dispute as to this issue, the Court finds that the numerosity requirement is satisfied.

      b.     *Commonality*

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class."  <u>See</u> <u>e.g.</u>, <u>Dujanovic v. Mortgage Am., Inc.</u>, 185 F.R.D. 660, 667 (N.D. Ala. 1999).  The threshold question of commonality is not high, and "is generally met when there is a common question of fact, *or* of law."  <u>Id.</u> (emphasis added).  Moreover, "[c]ommonality may exist where the party opposing the class has engaged in a course of conduct that affects all class members and gives rise to

6

a plaintiff's claim."  Id; see also Braxton v. Farmer's Ins. Group, 209 F.R.D. 654, 658 (N.D. Ala. 2002).

Plaintiff's claims are based upon Defendant's noncompliance with the technical provisions of the CROA.  While Defendant contends that it is not subject to the provisions of the CROA, it concedes that it does not comply with the CROA.  This Court's February 14, 2005, order established that Defendant is subject to the CROA and granted summary judgment for the Plaintiff on his claims as to §§ 1679b(b), 1679c, 1679d, and 1679e(b) and (c) .  Defendant's noncompliance with these CROA provisions by their very nature affects all class members.  The only question that is left to be answered is whether an individual class member purchased a service or entered an agreement with the Defendant within the applicable statute of limitations.  Because the CROA provides for liability and damages whenever "[a]ny person . . . fails to comply with any provision,"as regards Plaintiff's CROA claims, the commonality requirement is clearly met.

Defendant contends that Plaintiff's claims under § 1679b(a)(3) would require individualized showings by each class member of reliance on particular statements made by the Defendant.  As the Court's February 14, 2005, order makes clear, no such showing is required under this particular subsection.  The

7

common question of law, still left to be decided as to § 1679b(a)(3), is merely whether Defendant's websites contain statements that would be misleading or deceptive to the least sophisticated consumer. Therefore, the commonality requirement is also met regarding claims under § 1679b(a)(3).[5]

**c.** *Typicality*

For a plaintiff to meet Rule 23(a)'s requirement of typicality, "[a] class representative must possess the same interest and suffer the same injury as the class members . . ." Murray v. Auslander, 244 F.3d 807, 810 (11th Cir. 2001); see also Hines, 334 F.3d at 1257 ("Inquires into typicality focus on the similarities between the class representative's claims and the claims of the individuals in the putative class."); Cox, 784 F.2d at 1557 ("The claims actually litigated must simply be those fairly represented by the named plaintiffs."). Stated another way, "typicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." Hines, 334 F.3d at 1256. Moreover, typicality may be present even when "substantial factual differences" exist, so long as there "is a 'strong similarity of legal theories.'" Murray, 244 F.3d at 811; see also Wright v. Circuit City Stores, Inc., 201 F.R.D. 526, 543 (N.D. Ala.

---

[5] While Plaintiff's claims under § 1679b(a)(4) would require individualized showings of reliance that potentially would have precluded class certification, the Court granted summary judgment in favor of Defendant as to these claims and they are no longer pertinent to this lawsuit.

2001) ("particular factual differences, differences in the amount of damages claimed or even the availability of certain defenses against a class representative may not render his or her claims atypical.") (citations omitted).

For largely the same reasons that Plaintiff's claims meet the commonality requirement, Plaintiff's claims are also typical of those of all class members. Defendant contends that Plaintiff's claims are not typical because Plaintiff (and presumably other class members as well) is subject to unique defenses, such as the voluntary payment doctrine. The voluntary payment doctrine is a creature of Alabama state law, which applies to claims of unjust enrichment. Stone v. Mellon Mortgage Co., 771 So. 2d 451, 456 (Ala. 2000). The voluntary payment doctrine should not apply to Plaintiff's claims under the CROA, because it would totally undermine the statute and its purpose. See Burkes v. Lasker, 441 U.S. 471, 479 (1979). Because Plaintiff has not moved for class certification as to his state law unjust enrichment claim, the voluntary payment doctrine will not be a class issue at all, much less "central" to the litigation, and typicality exists. See Wright, 201 F.R.D. at 544.

   b.   *Adequacy of Counsel*

Rule 23(a) requires that both the representative plaintiff and the hired counsel "will fairly and adequately represent the class." Amchem, 521 U.S. at

9

625; London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003).  A

determination of adequacy entails a two part inquiry of "(1) whether any

substantial conflicts of interest exist between the named plaintiff and the class; and

(2) whether the representatives will adequately prosecute the action."  Valley Drug

Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003); see also

Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726-728 (11th Cir. 1987) ("[t]he

adequacy inquiry . . . serves to uncover conflicts of interest between named parties

and the class they seek to represent.").  While there is no generally applicable test

for adequacy of representation within the Eleventh Circuit, the representative

plaintiff should "possess the personal characteristics and integrity necessary to

fulfill the fiduciary role of class representative."  Kirkpatrick, 827 F.2d at 726-

728.  Furthermore, the class representative's interests must be such that he will

"assert and defend the interests of [all] of the [class] members," with

"forthrightness and vigor."  Lyons v. Georgia-Pacific Corp. Salaried Employees

Ret. Plan, 221 F.3d 1235, 1253 (11th Cir. 2000) (citations omitted).

 Defendant does not attack Plaintiff's chosen counsel as inadequate nor does

it allege that there is an improper relationship between Plaintiff and his counsel

which would defeat adequacy of representation.  The Court accepts that the chosen

counsel is adequate.  Defendant does, however, contend that Plaintiff's interests

may lead to conflicts with other members of the proposed class.  The Eleventh

Circuit has recognized that minor conflicts will not defeat certification, rather "the

conflict must be a 'fundamental' one going to specific issues in the controversy."

Valley Drug, 350 F.3d at 1189.  A conflict is fundamental where the actions of

Defendant have benefitted some class members and harmed other members.  Id.

In the instant case, while Defendant raises the spector of conflicts, it does

not point to any specific issue on which Plaintiff's interests actually diverge from

those of the class.  In fact, it appears that Plaintiff's interest are identical to any

class member who has been harmed by Defendant's conduct.  There being no

evidence that Plaintiff's interests have or will significantly conflict with those of

the unnamed class members, the Court finds that adequacy of representation

exists.

**2.      Rule 23(b)(3)**

As noted earlier, Rule 23(b)(3) requires a plaintiff to show that

> common questions of law or fact predominate over any questions affecting
> only individual members, and that a class action is superior . . . for the fair
> and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3); see also Amchem, 521 U.S. at 615.    Rule 23(b)(3)'s

requirements are aimed at situations where certifying a class would be more

efficient than maintaining individual actions, and at the same time provide

"uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results." Amchem, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes). In determining whether a class action meets the predominance and superiority criteria, the Court considers

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).[6] Addressing Rule 23(b)(3), the Supreme Court noted that at times the importance of each individual's class member's own particular interest will preclude class certification. Amchem, 521 U.S. at 616 (citing Fed. R. Civ. P. 23(b)(3) advisory committee's notes). In contrast, a class may be certified where manageable, when class claims are highly cohesive and "the amounts at stake for individuals" is "so small that separate suits would be impracticable." Id.

    a.   *Predominance*

At the heart of the predominance inquiry is an examination of each claim by the named plaintiff and its similarity to the claims of the proposed class. See

---

[6] While each of Rule 23(b)(3)'s criteria provide the Court with guidance in making a certification decision, the list of factors to consider is not exhaustive. 521 U.S. at 615.

Rutstein, 211 F. 3d at 1235 ("Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each member's underlying cause of action.").  If a determination of liability turns "upon highly individualized facts", then common issues of law or fact do not predominate.  See id. at 1235-1236 (quoting McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984)).  However, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004) (citation omitted).

The main issues implicated by Plaintiff's claims under the CROA are identical to the issues presented by each class member.  The CROA provides certain guidelines that a credit repair organization must follow.  Because Defendant concedes that it has never complied with the CROA, the main question to be answered is whether each class member purchased a service from the Defendant.  Once this determination is made, few if any individual determinations remain, and the predominance requirement of Rule 23(b)(3) is satisfied.

Defendant contends that because the CROA regulates "services" any class litigation would be dominated by making individual determinations as to which of Defendant's offerings is a service and whether each class member purchased a

product or a service.[7]  Each section of the CROA at issue here, with one exception,

applies to the credit repair organization's provision of "services" to a consumer.

The exception, § 1679c, provides that "Any credit repair organization shall

provide . . . the following written statement before any contract or agreement . . . is

executed."  The plain language of this provision does not require the agreement

and/or contract at issue to be one for "services" but rather includes "**any** contract

or agreement," between a customer and credit repair organization.  § 1679c(a)

(emphasis added).  Any customer who entered a contract or agreement with

Defendant, even one for purchase of a product, is entitled to damages if the

requisite statement was not provided.  See § 1679g.[8]

Defendant also contends that individualized issues of damages preclude

predominance and class certification.  While it is possible that the computation of

individualized damages may prevent class certification, "such cases rarely come

along."  Klay, 382 F.3d at 1260; see also Allapattah Servs. v. Exxon Corp., 333

F.3d 1248, 1261 (11th Cir. 2003) ("numerous courts have recognized that the

---

[7]  As recognized in footnote ten of the Court's February 14, 2005 order, two of Defendant's products the CreditCheck Monitoring service and the compilation of credit scores, are services.

[8]  Even if § 1679c(a) were interpreted to apply only to Defendant's provision of actual services to a customer, Plaintiff's proposed class definition is crafted to include only those purchasers who purchased a service rather than a product, such as a credit report.

14

presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.").  Moreover, "the Court's inquiry is limited to whether or not the proposed methods [for computing damages] are so insubstantial as to amount to no method at all . . ."  Klay, 382 F.3d at 1259 (citation omitted).  If "damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods . . . [individualized damages] is no impediment to class certification."  Id. at 1259-1260.

Here, class wide damages should be the greater of any actual damage sustained or any money actually paid to the credit repair organization.  § 1679g(a)(1).  Damages could be calculated simply by giving each class member a refund of any money paid to Defendant.  Whatever individual issues may exist as to damages, they are not complex enough to preclude class certification.

b.   *Superiority*

Like the predominance requirement, superiority is grounded in the idea that the litigation be carried out as efficiently and as fairly as possible for all parties. See Amcehm, 521 U.S. at 615.  The superiority requirement directs the court's attention to "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  Klay, 382

F.3d at 1269.  While many of the factors discussed militate in favor of certification, it is upon the ground of superiority that this motion for certification fails.

The interests of the class may be well served by class certification.  For example, the legal theories of Plaintiff's claims are identical with those of the class, and potential individual damages are small.  Each individual class member has little interest in controlling his own claim, which makes class certification desirable because "small recoveries do not provide the incentive for any individual" to prosecute the action.  Amchem, 521 U.S. at 617 (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)).  Class certification would solve "this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."  Id; but see Andrews, 95 F.3d at 1025 (decertifying a class, in spite of small individual claims, where RICO allowed for treble damages and recovery of attorney's fees).

The interests of the class members notwithstanding, the Court cannot certify a class here because it is not desirable to litigate all of the proposed class claims in a single forum and the unnamed class members could indeed proceed on their own and achieve a more equitable result.  Certification of this class action would likely lead to damages that "are grossly disproportionate to the conduct at issue."  Klay,

16

382 F.3d at 1271.[9]  The Eleventh Circuit has recognized that where a defendant

engages in conduct that is "intentional or deliberate," a class action is a suitable

vehicle for prosecution.  Id.  In contrast, "[w]here defendants are being sued for

statutory damages for unintentional acts under a strict liability standard, courts

take a harder look at whether a defendant deserves to be subject to potentially

immense liability."  Id.  This same reasoning is applicable "where damages are

being sought for technical violations of a 'complex regulatory scheme, subject to

different reasonable interpretations.'"  Id. (quoting London v. Wal-Mart Stores,

Inc., 340 F.3d 1246, 1255 n. 5 (11th Cir. 2003)).

In London v. Wal-Mart Stores, Inc., the plaintiff, the president of an

investment company with no credit problems, brought putative class claims

against Wal-Mart, a bank and an insurance company for their failure to comply

---

        [9]  In Roper v. Consurve, Inc., the former 5th Circuit noted, in *dicta*, that "because
considering the financial impact of a judgment presupposes success on the merits and requires
the trial court to express an opinion on the harshness Vel non of a particular remedy prior to trial
itself, it ought to be allowed only in extreme cases."  578 F.2d 1106, 1115 (5th Cir. 1978).  The
Roper court also implicitly recognized that, in certain circumstances, the court may be properly
"concerned with a fixed minimum penalty of a substantial amount for a technical violation, that
if magnified, would exact a punishment unrelated to the statutory purpose."  Id.  (internal
citations omitted).  Even considering the Roper court's reluctance to do so, it is within the
discretion of the Court to consider the issue of disproportionate damages in the instant situation.
Heaven v. Trust Company Bank, 118 F.3d 735, 739 (11th Cir. 1997) (ruling that "it is not an
abuse of discretion for the district court to engage in that debate . . . when determining the
appropriateness of class certification.").

with certain provisions of a Florida statute regulating creditor agents.[10]  340 F.3d at 1248-1249.  The plaintiff applied for a Wal-Mart credit card and enrolled in a life insurance program offered therewith, even though he did not need the insurance or the credit card.  Id. at 1249.  The district court below granted plaintiff summary judgment and certified a class of those who entered the same program as plaintiff.  Id. at 1250.  On appeal, the Eleventh Circuit concluded that plaintiff's relationship with class counsel was too close and created a conflict of interest.  Id. at 1254.  Accordingly, the court decertified the class.

After having concluded that the class should be decertified, the London court declined to address the remaining issues.  Id. at 1255.  However, in a footnote the court expressed "doubt as to whether the class certification could meet Rule 23(b)(3)'s superiority requirement."  Id. at 1255 n. 5.  In particular, the court noted that the plaintiff "suffered no economic harm," and that the legal violations were a result of defendants' noncompliance with " a complex regulatory scheme subject to different interpretations."  Id.  The London court reasoned that in such situations superiority is not likely met if "the defendant's potential liability would be enormous and completely out of proportion to any harm suffered by the

_____

[10]  Originally the plaintiff in London also brought claims under the federal Truth in Lending Act; however, those claims were settled prior to class certification.

plaintiff."  Id.

The situation that existed in London is directly analogous to the case at bar. Plaintiff is not an unsophisticated consumer or desperate debtor and admits that, other than one incorrect entry on his credit report, he did not have any credit problems when he contacted Defendant.  Plaintiff is the president of an insurance company and is not the type of individual whom remedial consumer protection statutes are designed to protect.  Like the plaintiff in London, Plaintiff does not appear to have incurred any actual damages other than his payment of $79.95 for a membership in Defendant's CreditCheck monitoring service.[11]  Although Defendant is within the purview of the CROA, its violations are strict liability violations very similar to the Florida disclosure provisions violated in London. Moreover, at summary judgment, Plaintiff presented no evidence that Defendant engaged in fraudulent behavior.[12]  At the most, Defendant has violated the technical requirements of "a complex statutory scheme."  London, 340 F.3d at 155

---

[11]  Plaintiff did actually receive credit monitoring, just as Defendant promised.  Plaintiff's perception that he did not receive what he paid for resulted from his misunderstanding of how he was supposed to check his credit monitoring alerts.  The Court also notes that Plaintiff renewed his CreditCheck membership after he had filed the instant lawsuit.

[12]  It is not hard to imagine fraudulent organizations or "scams" that would fall within the CROA's reach and would also be sufficiently culpable to warrant large scale class punishment. Such organizations exist and the Court raises no objection to severe punishment for these entities that prey on and fleece uneducated consumers.  Indeed such situations would be virtually perfect for class adjudication.  In contrast, judging from the evidence presented thus far, Defendant here is not such an organization, nor does this case present a similar situation.

n. 5.

Were this case to proceed as a class action, assuming large class participation, the potential damages could include a refund to nearly every customer who entered an agreement with Defendant since 1998.  The damages resulting would be devastating and largely out of proportion with the culpability of Defendant's conduct.[13]  When faced with similar situations, other courts, including the London court, have concluded that allowing the action to proceed in class form is simply not superior.  See Klay, 382 F.3d at 1271; See e.g., Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336, 347 (10th Cir. 1973)[14] (concluding that class certification of federal Truth in Lending Act claims was inferior "where the complaint contains no indication of any actual damages in substantial or provable amount," and "aggregated relief would be oppressive in consequence and difficult to justify."); Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412, 416

_____

[13]  Defendant's website actually contains a warning to its customers to avoid credit repair clinics.

[14]  The Wilcox court was careful to note that, in not certifying a class, it was not affecting the substantive rights of the unnamed class members.  474 F.2d at 347.  The court explained that "[t]o leave debtors to their individual remedies rather than to invoke the class action procedure involved the question of procedural fairness," not substantive rights.  Id.  Likewise, here, each unnamed class member may pursue an individual claim.  Given that the CROA provides for awards of attorneys fees, individual actions are not inconceivable even for those that are for relatively small amounts of money.  See Ratner, 54 F.R.D. at 416; see e.g., Cooper v. Sunshine Recoveries, Inc., No. 00CIV8898LTSJCF, 2001 WL 740765 (June 27, 2001 S.D.N.Y.) (granting $7,682.48 in attorneys fees based upon an individual CROA claim which settled for $750).

(S.D.N.Y. 1972) (denying class certification where "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for . . . technical and debatable violation of the Truth in Lending Act," would result.).[15]  Given that Defendant does not offer fraudulent services, considering that Plaintiff has exhibited little if any actual damages, and with an eye to the likelihood that class damages would be disproportionately large when compared to Defendant's actual conduct, the Court concludes that allowing this action to proceed in class form is not superior.

Based upon the foregoing, the Plaintiff's motion for class certification is hereby DENIED.  The case will proceed from this point as an individual action.

---

[15]     The court notes that in Braxton v. Farmer's Ins. Group, another judge in this district declined to deny class certification based upon the grounds relied upon herein. 209 F.R.D. 654, 662 (N.D. Ala. 2002) (Nelson). In Braxton, the plaintiff brought claims under the Fair Credit Reporting Act, which, like the claims in the instant action, were largely disclosure violations. Id. at 656. The Braxton court rejected the argument that class certification was not superior even in the face of technical violations and the possibility of large damages. Id. at 662. In rejecting the argument, the court relied specifically upon the fact that the violation complained of required a showing of willfulness. Id. Had the statute imposed strict liability absent willfulness, the Braxton court recognized that class certification might lead to draconian damages. Id. The court also noted that the maximum number of potential class members was approximately 9,000, thus decreasing the possibility of an exorbitant award. See id. at 663 n. 4. In contrast to Braxton, the case at bar presents the court with a class which will have hundreds of thousands and possibly millions of members. Furthermore, nearly every one of Defendant's customers may potentially receive a refund, even for things they actually received, such as credit scores. Finally, no provision of the CROA requires willfulness, and the entire statutory scheme imposes strict liability for the violation of any single provision. See § 1679g(a) ("Any person who fails to comply with *any* provision . . . shall be liable . . .") (emphasis added).

DONE this the 16th day of March, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge